STEPHANIE M. HINDS (CABN 154284)
Acting United States Attorney

HALLIE HOFFMAN (CABN 210020)
Chief, Criminal Division

MOHIT GOURISARIA (CABN 320754)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7063
    FAX: (415) 436-7234
    Mohit.Gourisaria@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MIN JIN ZHAO, <br>    a/k/a Michael Zhao <br>    a/k/a Michael West, <br><br> Defendant. | CASE NO. CR 19-222 JD <br><br> **UNITED STATES' SENTENCING MEMORANDUM** <br><br> Judge:  Hon. James Donato <br> Date:   November 15, 2021 <br> Time:   10:30 a.m. |

## I. INTRODUCTION

Min Jin Zhao is a serial fraudster, a shapeshifter. He has a knack for ingratiating himself with people, often those who share his own immigrant background. He pretends to become their confidante, feigns friendship. Between 2014 and 2016, Zhao defrauded at least 9 victims in a sprawling real-estate scam. He didn't cheat banks or companies or enterprises — he swindled ordinary, middle-class individuals who had worked hard to save their money to purchase a home.

But that's hardly all. Zhao's real-estate fraud was discovered by the IRS, and the government

U.S. SENTENCING MEMORANDUM      1
CR 19-222 JD

charged him with this case in 2019. For two years, he had six counts of fraud and money-laundering charges pending against him. At the same time that Zhao sought continuance after continuance from this Court under various pretenses, he — undeterred by the law and indifferent to the suffering of others — used his time on pretrial release to defraud at least two additional victims of their life-savings.

The egregiousness of the offense and well-founded concerns about recidivism lead the government to recommend a sentence of 50 months' imprisonment and 3 years of supervised release.

## II.     DISCUSSION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the seriousness of the offense, deter others from committing similar crimes, protect the public from the defendant, and rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The statute sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991. The Guidelines should be the starting point and the initial benchmark. *Gall v. United States*, 552 U.S. 38, 49 (2007). Though the guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

### A.     Guidelines Range

The PSR correctly calculates Zhao's Criminal History Category as I.

Paragraph 7 of the parties' plea agreement calculates the total offense level as 23, grouping the wire fraud and money laundering charges as two separate counts. This yields a Guidelines range of 46 – 57 months. Probation, on the other hand, groups the two counts together in a single group, for a total offense level of 20 and Guidelines range of 33 – 41 months.

Though there is proper legal basis for Probation's approach, there also is no prohibition against grouping the wire fraud and money laundering counts separately where the money laundering begins

after the wire fraud has been completed. Indeed, the parties agreed to the Guidelines calculation in paragraph 7 of the plea agreement. The government makes its sentencing recommendation in accordance with that agreement.

### B. The Government Recommends 50 Months' Imprisonment

Zhao is a serial fraudster. His conduct, which was despicable and intentional, has caused serious, lifelong harm to his victims.

#### 1. *Zhao Stole Money From Several Victims Who Trusted Him With Their Home Purchase.*

As set forth in the PSR and paragraph 2 of the parties' plea agreement filed July 12, 2021, Zhao defrauded at least nine individuals and couples, many of them immigrants like Zhao, out of hard-earned down payments meant for the purchase of homes in the San Francisco Bay Area. He misrepresented to his victims that a lender called Portfolio Consulting, Inc. ("Portfolio") offered a loan program that would allow the victims to make all-cash offers on their desired homes. Zhao did not disclose the fact that *he* owned and controlled Portfolio. After his victims sent approximately ten to twenty percent of the sale price to Portfolio, Zhao spent the funds on personal purchases or transferred the funds to another bank account he controlled. When victims sought their money back, Zhao lied to them that it was Portfolio (and not he) who had taken their money.

It is important to remember that Zhao was never destitute. He lived in fancy homes (in the Bay Area and in Palm Springs at the same time), frequently traveled abroad on holiday, indulged in classical music concerts and fine dining. In other words, Zhao comes from immense privilege; he has plentiful resources and elite education. These factors, which distinguish Zhao from the average convict who comes before this Court, should not detract from the severity of his criminal conduct. In statements submitted to Probation and to the Court, Zhao's victims describe the suffering that Zhao's has wrought. These include:

- **Victim C.D.** writes that his loss has led to depression and unemployment; he has had to seek therapy. He also explains how his relationship with his family has changed: "I became very aggressive and couldn't look my family in the eye out of shame for having lost the money for

our house." The money Zhao stole from him was all he and his family had: "We lost our savings to this scheme. We spent my son's college savings. My wife was so nervous she got sick. We were indebted to a lot of people, including the landlord. My children were affected by our depression, doing poorly at school. It was a nightmare in our family for years that affects us to this day." He writes that because of Zhao he had days he "wanted to die," that what Zhao did "was the worst moment" of his life.

- **Victim E.O.** too had to seek medical help for her anxiety and fear resulting from Zhao's actions. She writes of the toll this has taken on her and her family: "My family and I have hard time to communicate with people after this crime. We were very embarrassed and stressed. We could not sleep for months we lost all our saving. Sometimes I wished to die." In response to a question about how Zhao's crime affected her livelihood, she asks: "Can you imagine your filling [sic] after lose your life time savings?"

- Zhao's greed upended **Victim G.L.**'s life: "After the incident, we lost all our saving. This huge financial loss had a big impact to my marriage and the past couple years of living with my wife. The financial stress nearly brought my marriage to the end. We had countless of flights and arguments related to this crime. My wife was diagnosed with Depression shortly after the incident." He and his wife had to move in with his parents, on whom they became financially dependent. He also writes this important reflection on the long-term damage caused by Zhao: "As first general [sic] of Asian American, I was always taught with good moral and value. I had fully trusted the defendant with all my saving, as he was referenced by my close friend. As you can imagine the feeling of betrayal by the defendant was traumatic. After the incident, I no longer trust anyone, not friends or family."

These victims knew Zhao better than the Court or Probation or even his counsel ever will. And their words make clear that Zhao is no more than a greedy, entitled thief who used his victims' life-savings — and trampled on their sense of trust and dignity — simply so that he could have an additional eight hundred thousand dollars to support his spendthrift lifestyle.

### 2. *Zhao Violated His Pretrial Release Conditions, Continuing to Scam New Individual Victims Whilst This Case Was Pending.*

Notably, the victims in this case expressed fear that Zhao will retaliate against them for speaking to the Court, and also predicted that given his nature Zhao would no doubt continue to defraud others. At least on the latter point, their words have already proven true more than once.

Whilst he remained on pretrial release in this case, Zhao continued to live his luxurious lifestyle on the backs of new victims. In March 2021, whilst claiming to be incompetent to stand trial in this case, Zhao attended a dinner with victim X.W. (a Chinese immigrant), her boyfriend and others at the Waldorf Astoria in Los Angeles. Zhao claimed (falsely) to be a Sony executive, and told X.W. that if she invested half a million dollars with Big Block Consulting, Inc ("BBC"), she would be an executive producer on BBC's movie projects and receive two percent of BBC's earnings. Based on his persistence and fraudulent representations, X.W. borrowed $300,000 from her sister in China and wired it to Zhao. When Zhao sought additional money from X.W., the FBI consensually recorded a call between him, X.W., and X.W.'s boyfriend.[1] During the call, Zhao lied that Sony owned 55 percent of the next Spiderman film, and that he would also try to bring X.W.'s boyfriend into the film's production.

Zhao's fraud against X.W. is charged in a separate, pending criminal matter (*see* 21-cr-181 VC). In addition, since charging the new case against Zhao, the government has learnt of at least one additional victim (R.K.) whom Zhao defrauded over the course of several years, between 2017 and 2021.[2] Zhao was a close friend and confidante to R.K.; he stole her life-savings, over a million dollars.

Finally, the government is far from convinced that Zhao has learnt his lesson. With new victims X.W. and R.K., he proved to this Court that he is incapable, or perhaps simply uninterested, in mending his ways. Because Zhao respects neither his victims nor our criminal justice system, his sentence must not only disable him from stealing the hard-earned life-savings of future victims but also broadcast to the public that our courts won't tolerate economic crimes that leave individuals devastated.

---

[1] Though he utilizes a Mandarin translator for his court appearances in this matter, Zhao spoke clear and fluent English on the recorded call.

[2] Extensive discovery related to victim R.K. has been produced to Zhao's counsel in the 21-181 case. In addition, the government has informed Mr. Weinberg of victim R.K. and also provided him with a copy of the FBI's interview memorandum outlining the yet-to-be-charged crimes related to this victim.

U.S. SENTENCING MEMORANDUM         5
CR 19-222 JD

### III. CONCLUSION

With full consideration of the Sentencing Guidelines and the factors set forth in 18 U.S.C. § 3553(a), the United States respectfully requests that the Court sentence Zhao to 50 months of imprisonment and 3 years of supervised release (with the conditions recommended by U.S. Probation). Also, in accordance with the plea agreement, the Court should order that at least $791,401.26 in restitution be paid to the victims.

DATED: November 1, 2021                                    Respectfully submitted,

                                                           STEPHANIE M. HINDS
                                                           Acting United States Attorney


                                                            /s/ Mohit Gourisaria
                                                           MOHIT GOURISARIA
                                                           Assistant United States Attorney